Mr. White. Yes, Your Honor. Good morning and may it please the court. We have raised two separate issues that we believe constitute error from the Patent Trial and Appeals Board's final written decision with respect to the 880 patent. The first issue is the Board's conclusion that claims 2 and 4 of the 880 patent are not obvious in view of the McCree and Terleski prior art references. Now this issue focuses on the term a pair of stationary arms. This term was originally interpreted in the institution decision as including a projection. But during the hearing the Board raised the possibility of using a different construction and ordered additional briefing on that issue. Both parties submitted additional briefing and then in the final written decision the Board applied a new construction. The new construction of that term was a slender part of a structure, machine, or instrument projecting from a main part, axis, or fulcrum. The Board also mentioned a negative limitation suggesting that the arms must be something other than a pivot or a fastener. Now in analyzing claims 2 and 4 under that new construction, the Board said in the final decision that Petitioner, that's us, does not address how McCree teaches stationary arms. That's in the appendix at page 23. They went on to say Petitioner instead states that Terleski includes stationary arms. The challenge, however, relies upon McCree for that teaching. So that's where we think the Board got it wrong and missed the fact that Brunswick did in fact address how McCree teaches stationary arms. That's in the record at page 4433 of the appendix. So what the Board actually cites on page 23 are in fact the very passages that you, quite hopefully simplifying your argument, point to and say here's where we said something that we think that the Board disregarded. But Petitioner briefs 6 through 8, which is at 4432-34 of the appendix, are exactly those pages. And when the Board goes on to say Petitioner states that Terleski, you do also state that at those pages. You say neither one of them. So why do we not read the Board's statement as attending to the point but finding your explanation insufficient so that when you read the sentence Petitioner does not address and then you lowered your voice how McCree teaches, raise your voice at how McCree teaches. You haven't, in fact, by referencing support, said what it is about pin 10 that's special from basically any pin. Sure. And I didn't intend to minimize it. No, no, I know. I understand the argument. So let me address that first. The first question is how can we read the Board's decision the way we read it? I think that's the only way to read it when you consider the two sentences together. When you look at the sentence that says Petitioner does not address how McCree teaches stationary arms under that construction and then follow it up with the next sentence that says Petitioner instead states that Terleski includes stationary arms. When you read those two together, I don't see how you can come to any other conclusion other than that they overlooked the arguments made about how McCree actually does teach that. In fact, there is, there's a page long explanation of how McCree teaches it. And if you look at that, it lines up clearly with the new construction that the Board offered. Specifically, if you consider back to the new construction, it was a slender part of a structure, machine, or instrument projecting from a main part. And if you look, the pins 10 are also things that project from the main part. That's right in at 4433. It talks about the pins 10 project from the main part, which is the sidewall 12. And then they also support the arms from there. So when you line up with what was... Does the McCree reference say that they support the arms expressly? I believe they do, Your Honor. Let me find that. Let me grab it. So this is at Appendix Site 379. The statement is arms H, which are the pivoting arms in McCree. What column? I'm sorry, column 2, line 32 about. Right, there's a figure 2 in there, and it's the sentence that's after figure 2. Do you see that? Mm-hmm. Are we on? Were you able to find it, Judge Moore? Okay. So on column 2, lines 30, I'll call it 32. It says arms H, which are the movable arms, are pivotally supported at their upper ends by pins 10 that project outwardly from adjacent faces 12 of the reservoirs. So if you look and apply that to the construction, it lines up almost word for word with how the board construed that requirement. They project out from a main component, and they support the movable arms. So I think it's crystal clear there from McCree that it actually does describe what's required under the board's new construction. And what is the sense in which essentially any pivot wouldn't do exactly that? Well, here I think the sense is if you look, for example, at the fasteners that are described in the 8.8.0 patent that connect the two arms together, those connect the two arms together, but they don't have the additional requirement that they project out from something or attach to something more rigid. They're sort of floating in space, if you will, and connect two components together. So here you have to have something more than just a fastener, more than just a nut or bolt. This thing has to be attached to something else and project out for and then also support. So I think it's that combination of things not only connecting, but also attaching to something rigid and supporting it that makes it different than just a run-of-the-mill fastener, Your Honor. So when the board says in its claim construction, you can't just have a pivot attached to what is after all stationary. I guess I'm struggling a little bit to understand what that could mean that didn't already just exclude what you've just described. Yeah, and I think that's the best example I've got for you is if you have just a nut and a bolt together, those two, that is a fastener, that could connect two things together. Right, but by definition in the context here, the one thing that's being connected is stationary already. Is that right? Well, you've got a stationary arm, so that's the thing that we're talking about. What is the stationary arm? It's actually connected to something else, another point. So we're talking about what is the component that attaches the movable arm to something else, the base. So I think that's where we've got a difference is you could have a fastener like just a nut or bolt that would not satisfy that requirement because it would not connect something to a rigid structure of a base. But here you've got the pin that's attached to the base. That makes it a non-movable arm, and it also has the fastening capability as well. So it's got the dual function, and that's supported in the briefs. It's supported in Dr. Garris' declaration and the deposition. Those are all our expert sites. Those are in the brief, but the sites I can give you are the appendix 4433, appendix 379 as we just talked about the reference, and then Dr. Garris' declaration is appendix 450 and his deposition is appendix 1549. All those go through and explain the dual function of the pin in McCree that lined up exactly with what the board has required. I'm going to move to the second issue unless anybody has additional questions on that. The second issue that we've raised relates to the board's decision that claim five of the 880 patent is not anticipated by suitor. So different claim. This one's got means plus function language and a different prior reference suitor that's being applied here. This issue focuses on the term means for coupling the step to the boat. So you've got the step at one end, you've got the boat at the other. The board's construction was that that means for coupling requires at least the pair of movable arms and stationary arms. So similar but different claim language here because it's means plus function and we're applying a different prior reference. Suitor uses a post to connect steps to fixed arms, which are brackets 18, on the boat, and the board found that a post is not the same as a pair of arms. So it analyzed whether the suitor structure is an equivalent structure to what's required by the means plus function interpretation. Now, in performing that analysis, the board first erred by requiring in order to be an equivalent, there must be. Now, those are their words. There must be insubstantially different structure. We believe, and I think the case law makes it clear, that that is only one of the three ways to prove equivalence. And I'll come back to this because there's three different ways. We think we've proven it under at least one of the other ways and possibly two. The second error that we see in the board's analysis is how it focused on specific component parts rather than the overall structure as described in the suitor prior reference. So let me start with that one. The manner in which the board applied the insubstantial difference test shows that it focused improperly on individual structural components rather than the overall structure of the device as a whole. Specifically, the board said the petitioner has failed to establish sufficiently that a single movable arm, which was the post in suitor that flips down with the steps off of it, is insubstantially different from the structure described in the 880 patent. That's at the appendix, page 27 through 28. This approach was rejected in the Odetics case, which requires a comparison of the overall structure. Can I just ask, I guess, what's off about thinking of this as saying there is evidence, and it's on its face plausible evidence, that when you have a horizontal step connected only to a post in the middle, there is a material difference in wobbliness or potential wobbliness of the steps. The weld may come loose. It's substantially different from having both ends of the step attached. And if that's a substantial difference, then the whole thing is substantially different. So I think the problem with that is relying upon elements that are not in the claims. The claims don't require a specific location for the connections or a specific manner of connection. If you look at the claim language here, what we're dealing with are means for coupling. The board said it's movable arms and stationary arms. And if we have those in an equivalent manner, that meets it. The fact that it may attach differently is not relevant, especially when you look at the function way result test. And again, that's why we think one of the problems with the board's construction is, if you limit this just to the insubstantial difference test. Well, there's no authority that you have to apply both tests. I thought it was pretty clear from the cases that you could apply either test. Well, I think the issue we have with that is we did make arguments about the function way result. That was the focus and the primary argument that we made. And if the board disregarded that, I think we're back to the same position that we started with on the first issue, is if we've got evidence in there that explains exactly how the function way results do line up and the board doesn't. The fact that the board didn't address your test, though, when it expressly said that the post and the bracket wouldn't be enough because it would require additional structure to maintain the stability. I mean, whether they called that your way component or your result component, the fact finding is still there. But they've lined it up with the language of the test you prefer versus the insubstantial differences test. I don't see how that changes the outcome. I think at least two different ways. First of all, that was testimony about a certain size step. So if you wanted to put a big flat step on there like is disclosed in the 880 patent in the preferred embodiment, then the expert says you'd have to have some sort of plate on there to have additional structural rigidity or support. But the claims don't recite a specific size or shape of step. In fact, they're broad and the specification says any step of shape or size can be used. And clearly, the reference here discloses steps and it's more than sufficient for its size and shape step. You also have the presumption of operability in that sense. So I think that's one reason why you don't have to focus on that. Second of all, again, you're looking at limitations that are not in the claim. It doesn't talk about having a certain stability or rigidity. So for at least both of those reasons, I think it does matter. And you can't say just because it's got one shape versus a differ that that means it's a substantial difference. Well, following up on this and also returning to Judge Toronto's point, I think that unless I'm mistaken, the board found that the structure is at least the pair of movable arms 20A, 20B, and the pair of stationary arms 26A and 26B. It actually included the numbers in its identification structure from the spec. So when you look at those numbers, it is clear, as Judge Toronto pointed out, that those are arms located on opposite sides of the step and would produce much greater stability than a random single post stuck underneath. So why isn't all of that relevant? You said that the claim doesn't require spacing of the arms, but why don't I say, yes, it does, because the board found it's arms 20A and 20B, and those are located on opposite ends of the step. Sure. I think if the board had gone farther to say it's the arms 20A, 20B, 26A, 26B, attached in a certain manner, attached to the step at the outer edges, or attached at a certain location, then I think that you could. But again, we have to look at the... No, but it quoted where 20A and 20B. You have to look at the figures to find out what they are and where they're located. Sure, absolutely. But think about sort of the flip side of this for infringement purposes. If you had arms, the same type of arms, 20, 26, and you put them close together in the middle, would that get you out of an infringement situation because they were located in a different location? I don't think so because if you look at the claim and look at what's actually in the limitations, they don't have any requirement for the spacing or anything like that. So to try to read that in here to avoid an invalidity ruling, I think is just completely improper. You have to look at what's actually in the wording that they adopted, and I don't see any requirement or limitation as to where the arms go, how they're attached, or any type of structural rigidity that's required. Except that the description in the spec shows arms spaced apart by a reasonable difference, and everything about this patent would suggest that you want stability to that step to allow people to exit and enter the boat. And so I think that your idea that you could replace two arms spaced on either side of the device with a single post in the middle that might result in wobbliness, I mean I'm just having a lot of difficulty finding that that fact-finding by the board ought to be reversed under the standard of purview that we give them. In fact, I think under a NOVO standard I'd firm them. So I think there, again, it depends upon the size or the shape of the step. You do not have to read into this that big, flat, wide platform that's in the patent. And the steps in the prior reference are steps. They do meet the requirements. And again, there's a presumption of operability that they are more than sufficient to support those types of steps. The other thing I would say to keep in mind too is that there's additional components. You've got a rail and a flange that are used in the embodiment here that actually go between the two arms, the movable arms 26, and those were not included as part of the construction here. They said at least it included the movable and stationary arms, but they did not require that flange and the rail. So if you look in the patent, there's a flange and a rail. That type of platform, that plate that you would see is required, and that was not read into this definition here by the PTAB. So I'm over my time. I'm going to stop unless you have additional questions. That will give you two minutes for rebuttal. Thank you, Your Honor. Ms. Spicks. Thank you, Your Honor. On the McCrea reference, I wanted to make a point. If you look at the McCrea pin itself, which is on the appendix at 378, that pin 10, which is attached to the arm H, is utilized to fasten the movable arm pivotally to the base. If you determine that that pin is, in fact, a stationary arm, then you've eliminated the requirement in the claims for a stationary arm. I mean, the claims require stationary arms that are coupled to a base and movable arms that are then coupled to the stationary arms. In this scenario, the pivot pin is simply directly attaching the movable arm to the base. There is no stationary arm. And so the board's opinion that that was merely a pivot or a fastener was correct. The fact that McCrea indicates that the pin supports the movable arm doesn't make it more than a fastener or a pivot. A pivot, by definition, has to support the thing that is pivoting on it. A fastener, by definition, has to support the thing that it's fastening. So the fact that it supports it doesn't make it more than simply a pivot or a fastener. Is there some notion of it? I guess this is what I thought they might have been getting at in that page, page 7 of the plane construction brief, that support has something to do with bearing and that there are certain kinds of fasteners that might merely be, might not bear weight, and this one does, and therefore this one provides support because it's weight-bearing and that's not true of all pivots, and so this one is included. I realize I may be reading into it. Right. I certainly didn't read that in any argument they presented. They didn't, the only argument they presented in evidence that this was more than a pivot fastener was the evidence that they've cited to on this page 7, and it really doesn't suggest how they're indicating that it does provide something more than a pivot or fastener. Can you address the sentence on page 23 of the board's decision, and in particular the sentence that comes after, in that briefing, however, petitioner does not address how. Right. Petitioner instead states, doesn't that suggest that the board actually read page 7 of that cited petitioner brief as invoking only Terleski  in the larger paragraph about McCrea, they said. I think a better reading, especially when you look at page 7, since they indicate they did look at those pages of the argument, they asked for argument on the issue, and they cited to the pages that the argument appeared. They say does not address how, and I believe that's an important point because there are other places. I guess I want you to focus on the word instead. The way that I interpret that is when you look at the argument as to Terleski, there actually is an arm in Terleski. It's not a stationary arm, but it is something beyond a pivot point. So I think when they're saying instead they're showing it in Terleski, they're just indicating that they haven't shown how there's something other than a pivot in McCrea. Instead, they're showing something other than a pivot in Terleski, but they didn't rely on Terleski for that point in their petition. I just want to make sure I've addressed everything. I guess I would again emphasize that the petitioner is indicating that there's this dual function of the pen in McCrea, and the board did evaluate McCrea. They cited to McCrea. They evaluated evidence that the patent owner presented, including an expert declaration, Green, which is at the appendix 1986, where he indicates this is nothing more than a pivot or fastening structure. He indicated that with the patent owner response. So this was something that could have been disputed through evidence on reply and was not. Then I'd like to go on, if I could, to the arguments regarding Souter, unless you have some questions. Go ahead. They first faulted the board for stating that the standard for structural equivalence is in substantial differences, and as I read odetics in the cases, insubstantial differences is the standard. You can determine whether or not the differences are insubstantial in a number of different ways, including with the modified Rayway result test, or with interchangeability, or in some other way that the differences were insubstantial. But if you look at the argument, and the only argument that was submitted by the petitioner was in their reply, it's at appendix 2817. They say, and again, this is the only evidence they presented on structural equivalence, regardless, Souter's structure is certainly equivalent. Structural equivalence under 112 paragraph 6 is met when the differences are insubstantial. So this is the argument that was presented in the reply. In addition, if you move on, they then say both movable arms 20A and 20B of the 880 patent and post 24 of Souter function to couple the step, and then they go on, and the only analysis that they provide is a comparison between the movable arms 20A and 20B and post 24. So now they're asserting that the board was incorrect in referring to insubstantial differences, even though that was the standard that they also focused on, and they're objecting to the board's comparison of the movable arms to the post, but that's the only evidence of any sort that they presented. That's the only argument that they presented. And as to all of the evidence that the patent donor presented as to why there was a difference in the way and the result that the structure operated, they rejected them all just as he did here on the basis that those weren't relevant. But they are relevant because the issue is whether or not the structure performs the function in the same way to achieve the same result. In the testimony that we presented of Mr. Green, he pointed out that not only is the post attached on one side of the step as opposed to two arms on either end, but that post is pivotally attached, which I think is important to understand. It is not fixedly attached to the step the way that the movable arms are in the COBOL patent. And because it's pivotally attached, the step actually can flip. Like when the post goes up, the step flips all the way down to where it's just laying vertically against the side of the post. It's not extending out horizontally. When the post then flips down into the water, the step flips out, but what stops it is not the post that it's attached to. It's another post, which unfortunately it's also referred to as a post, but it's post 30, which is a separate structure that's extending under on the side of the step. That's what stops it and then holds it out vertically. It's completely separate from the vertical post that is post 24 of Suter that they asserted was somehow equivalent. So Mr. Breen went through and said, look, it's not positioned at the same place. It's fixedly attached as opposed to pivotally attached, and this results in a very different structure. They didn't indicate that those differences were not substantial. They didn't present any evidence contrary to that. They didn't present an expert declaration in rebuttal at all. They provided attorney argument, which focuses exclusively on functional equivalence, not on structural equivalence. So they didn't dispute any of the arguments that Mr. Breen presented. Mr. Breen also then said, and it's not interchangeable. So first he addressed way and result. It's not the same way and result. And then he said it's also not interchangeable because if someone was going to interchange the single post for the two, then you would put it for stability under the center and you would need some kind of a plate. It had nothing to do with the size of the step. It just has to do with the fact that the post would not provide stability or at least from a whether or not you would decide to replace one or think one could replace the other is what he was saying, was that you would need some kind of a support. The biggest issue I think here is that the patent owner presented a lot of evidence about why there was no structural equivalence. The petitioner had the burden to present evidence, and they presented none. These arguments are simply about functional equivalence, and when you go over to the Appendix 2818, they simply say, well, the exact manner the steps are secure is immaterial because functionally the differences are insubstantial. Well, that's not the test. It's not about functionality for way and result or for structure. It's about whether or not the structure is the same, and they didn't address that. They also said it wasn't relevant if it was interchangeable. But again, it is relevant. That's one of the tests that you can show that it's substantial or insubstantial differences. I think those were the only points that I wanted to make, unless you have some questions. Okay. Thank you, Ms. Leiser. Thank you. Mr. White, you have two minutes. Thank you, Dr. So first, on the McCree issue, McCree clearly states that the movable arms are supported by the pins, so I think that that clearly shows that. It shows that the pins do more than just couple. They also support. That's directly in McCree itself. I think the instead language from the board's decision shows they just missed some of the arguments. And as we know from the Security Exchange Commission versus Chenery and Applied Materials, you have to evaluate the decision on what's written in the board's final written decision. We see no acknowledgment or analysis of the arguments that we made with respect to McCree, and therefore it requires remand to address at least that issue. In terms of the Claim 5 issue with Souter reference, the structures do not have to be identical. That's the whole point of the equivalence test. If the structures had to be identical, you would never get to the equivalence test. We did present arguments about the function, the way, and the result, that the two compared devices work. Why is that important? Because the test is, does the device in the prior art perform the identical function? Does it do it substantially the same way to achieve substantially the same result? And the answers to those are yes. We provided evidence of that in the arguments, and we also addressed it in the briefing. So, yet, if you look at the board's decision, it showed no analysis of that issue whatsoever. So, again, we think it requires remand at least to address that issue, to address those issues, and deal with the arguments and the evidence we presented. And finally, on the last issue I raised before I sat down the first time, I mentioned to you the flange and the rail as being at least something to consider when you look at the drawings as to you see what the movable arms 26 are attached to. The site of that is appendix page 48, and the flange is labeled 19 in the drawings, and the rail is labeled 18. So, when you're looking for the support for that argument that I made to you, that's where you'll find it in the record. That's all I've got. Thank you, Your Honors. Thank you, Mr. Wink. Thank you.